IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAMIEN JAHON REYNOLDS,<br><br>Defendant. | Case No. 3:24-cr-16-REP |

## STATEMENT OF FACTS

The United States and the defendant, DAMIEN JAHON REYNOLDS (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. Beginning as early as on or about December 20, 2023, and continuing until on or about February 9, 2024, in the Eastern District of Virginia, and within the jurisdiction of this Court, the defendant, DAMIEN JAHON REYNOLDS, did knowingly, intentionally, and willfully combine, conspire, confederate and agree, with TREY ALLEN WRIGHT ("WRIGHT"), and with others, known and unknown, to distribute and to possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(C).

2. On or about February 9, 2024, in the Eastern District of Virginia, the defendant, DAMIEN JAHON REYNOLDS, did knowingly possess a machinegun, to wit: a 3-D-printed "auto sear" or "conversion switch"—a combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single

1

function of the trigger—machinegun as defined in 26 U.S.C. § 5845, in violation of Title 18, United States Code, Section 922(o) and Title 26, United States Code, Section 5845(b).

3. On December 20, 2023, a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent, acting in an undercover capacity (the "UC"), conducted a controlled purchase from the defendant and WRIGHT in the Eastern District of Virginia of purported "ecstasy" pills (later determined to be methamphetamine), 12 machinegun conversion switches, and 2 privately made firearms ("PMFs") that were also installed with 2 additional conversion switches. The UC made contact with WRIGHT by telephone calls and SMS messages to a cell phone used by WRIGHT. The UC was equipped with audio/video recording equipment during the controlled purchase, and the UC was provided with a quantity of official government funds to purchase "ecstasy" pills, conversion switches, and firearms.

4. The defendant conspired and agreed with WRIGHT to distribute the narcotics, firearms, and conversion switches to the UC on December 20, 2023. The defendant provided all of these items to WRIGHT, the defendant drove WRIGHT to the meeting location for the controlled purchase, and WRIGHT then delivered the narcotics, firearms, and conversion switches to the UC.

5. The purported "ecstasy" pills that the defendant and WRIGHT sold the UC on December 20, 2023, were submitted to the Drug Enforcement Administration Laboratory for analysis where they were determined to be 60.73 grams of a mixture and substance containing methamphetamine.

6. The 2 PMFs that the defendant and WRIGHT sold the UC on December 20, 2023, were one PMF frame with a Glock 22 slide displaying serial number NVV597, and one PMF frame

with a Glock 27 slide displaying obliterated serial number BVXZ515; both with attached conversion switches ("the PMFs").

7. ATF Firearms & Ammunition Technology Division ("FATD") confirmed that the PMFs are both "firearms" as defined in 18 U.S.C § 921(a)(3)(A); that the conversion switches attached to the PMFs, both separately are "machineguns" as defined in 18 U.S.C § 921(a)(24); and that the PMFs with the conversion switches installed were designed to fire automatically with a single function of the trigger and were therefore machineguns. When test fired with the conversion switches engaged, both PMFs fired five rounds automatically by a single function of the trigger.

8. ATF FATD further confirmed that each of the 12 conversion switches sold separately from the PMFs are "machineguns" as defined in 18 U.S.C § 921(a)(24); and that each of the 12 conversion switches is a combination of parts designed and intended for use in converting a weapon into a machinegun. When one of the 12 conversion switches was installed into a firearm and the firearm was test fired with the conversion switch exemplar engaged, the firearm fired five rounds automatically by a single function of the trigger. The defendant knew that the 12 individual conversion switches and the 2 conversion switches installed in the PMFs were designed and intended for use in converting a weapon into a machinegun.

9. On February 9, 2024, ATF SAs and members of the ATF's Special Response Team executed a search warrant at the defendant's home and surrounding curtilage, at 7293 Macedonia Road, Woodford, Virginia 22580. Among other evidence, during execution of the search warrant, agents recovered additional suspected narcotics and "machineguns" as defined in 18 U.S.C § 921(a)(24).

10. The Drug Enforcement Administration Laboratory tested the narcotics and determined that the suspected narcotics recovered included more than 500 grams of actual

3


methamphetamine. The methamphetamine recovered from the defendant's house was in various forms with varying purity levels, but included 507.84 grams of a crystalline substance that was determined to be methamphetamine hydrochloride with 98% purity, and 843.87 grams of pills determined to contain methamphetamine with varying levels of purity of 12% or less. 42.57 grams of cocaine and 334.5 grams of ketamine were also recovered from the defendant's house. The defendant possessed the methamphetamine, cocaine, and ketamine with the intent to sell it.

11. Agents also recovered additional conversion switches and a firearm with an attached silencer in the defendant's house, and a 3-D printer in a shed in the defendant's backyard. The 3-D printer had a 3-D-printed conversion switch on it. The firearm with the attached silencer was an AR-type privately made firearm and the silencer was not registered to the defendant in the National Firearms Registration.

12. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

13. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Ellen V. Hubbard
Special Assistant United States Attorney
Peter S. Duffey
Assistant United States Attorney

Date: 4/25/24

5

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, DAMIEN JAHON REYNOLDS, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
DAMIEN JAHON REYNOLDS

Date: ___4/25/24___

I am Paul Gill, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Paul G. Gill
Attorney for DAMIEN JAHON REYNOLDS

Date: ___4/25/24___

6